**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23581-ALTMAN/Hernandez**

SEA SWIVEL INC.,

     *Plaintiff*,

v.

SHUTTLESLIDE LLC *and*
RUSSEL TAYLOR,

     *Defendants.*

                             /

## REPORT AND RECOMMENDATION

Before us is Plaintiff Sea Swivel's ("Plaintiff") Renewed Motion for a Preliminary Injunction ("Motion"), [ECF No. 56], which seeks to enjoin Defendant Shuttleslide LLC ("Defendant") from "unlawfully using and further infringing upon Sea Swivel's Patent," *id.* at 1.  The matter has been fully briefed.  [ECF Nos. 64 & 75].  After careful review of the briefings and with the benefit of an evidentiary hearing, we respectfully **RECOMMEND** that the Motion be **DENIED**.[1]

## BACKGROUND

Plaintiff sells the "Original Swivel Mount," a "heavy-duty, fully adjustable" motor mount (the "Swivel Mount"), for which it holds Patent 12,258,111 (the "'111 Patent").  [ECF No. 56 at 1; ECF No. 56-2 at 1].  The Swivel Mount "allow[s] a trolling motor to pivot laterally without removing the mount from the deck, enabling users to redirect motor thrust and stow the motor without removal or disassembly."  [ECF No. 56 at 3; ECF No. 56-1 ¶ 3].  Approximately 80% of Plaintiff's business comes from commercial distribution.  [ECF No. 56 at 4; ECF No. 56-1 ¶ 19].

---

[1] The Honorable Roy K. Altman referred this matter to us for a report and recommendation.  [ECF No. 57].

On August 8, 2025, Plaintiff sued Shuttleslide, alleging that its SS-7.5R Rotating Mount and SS-9.5R Rotating Mount (the "Accused Products") infringe on the '111 Patent. [ECF No. 1 ¶¶ 25, 44–50]. On October 1, 2025, Shuttleslide, along with two co-defendants who are no longer parties, moved to stay the case pending their petition for post-grant review ("PGR") of the '111 Patent by the U.S. Patent Trial and Appeal Board ("PTAB"). [ECF No. 13 at 5]. In the stay motion, Shuttleslide argued it was "highly likely that the PTAB will invalidate one or more of the [patent] claims . . . resulting in [Plaintiff's] Complaint being dismissed." *Id.* On October 14, 2025, Plaintiff moved for a preliminary injunction, which it supplemented with an additional declaration on October 15. [ECF Nos. 20 & 23]. On October 24, 2025, the district court granted the stay and denied Plaintiff's preliminary injunction motion as moot. [ECF No. 35 at 4].

On March 17, 2026, the PTAB denied Shuttleslide's PGR petition. [ECF No. 39-1]. A week later, the parties filed a joint notice informing the Court of the PTAB's decision. [ECF No. 39 at 2; ECF No. 39-1]. The parties also moved for a status conference, which was referred to us. [ECF Nos. 40 & 41]. At the status conference, Plaintiff said it would file an amended complaint[2] and renew its preliminary injunction motion against Shuttleslide. [ECF No. 75-1 at 4:5–12]. On May 1, Plaintiff filed its amended complaint, removing all co-defendants save for Shuttleslide and splitting its infringement count into two—one count for each allegedly infringing product ("Amended Complaint"). [ECF No. 55 ¶¶ 34–40 (Count I); ¶¶ 41–47 (Count II)]. That same day, Plaintiff filed the instant Motion. [ECF No. 56]. Shuttleslide filed its opposition brief, [ECF No. 64], and Plaintiff filed its reply, [ECF No. 75].

On June 8, we held an evidentiary hearing. [ECF No. 86]. Two witnesses testified: Mark Berta, Sea Swivel's founder and owner, and Russell Taylor, Shuttleslide's founder and president. *Id.*

---

[2] The amended complaint removed co-defendants and their related claims but did not alter the Shuttleslide-related allegations and claims. *See generally* [ECF No. 55].

The parties also submitted exhibits, including the devices at issue—the Sea Swivel and the Shuttleslide motor mounts.  [ECF Nos 87 & 98].  On June 18, 2026, Plaintiff amended its complaint a second time, adding Mr. Taylor as a defendant ("Second Amended Complaint").[3]  [ECF No. 90].

The Motion centers on Claim 1 of the '111 Patent, which reads:

A swivel mount, comprising:

[A]n elongated mounting plate comprising first and second opposing faces spaced apart by one or more peripheral sidewalls;

[A] support plate comprising first and second opposing faces spaced apart by one or more peripheral sidewalls, wherein the support plate has a length less than or equal to half a length of the elongated mounting plate; and

[A] swivel element, wherein the swivel mount is configured for the elongated mounting plate, the support plate, and swivel element to be coupled together such that:

The first faces of the support plate and the elongated mounting plate are parallel;

The swivel element, the support plate, and the elongated mounting plate at least partially overlap each other; and

The swivel element is arranged such that the elongated mounting plate is able to swivel about an axis that is perpendicular to and passing through the first face of the elongated mounting plate at a point spaced from a widthwise center line of the elongated mounting plate.

[ECF No. 56-2 at 18:44–65].  Sea Swivel alleges that the Accused Products meet every limitation of Claim 1 and therefore literally infringe that claim.  [ECF No. 56 at 6].

### LEGAL FRAMEWORK

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction.  Fed. R. Civ. P. 65.  "A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the

---

[3] That Mr. Taylor is now a defendant does not mean the Motion automatically applies to him as well.  But, as Shuttleslide's president, Mr. Taylor would be covered by any preliminary injunction binding Shuttleslide, because he is the company's officer and agent.  *See* Fed. R. Civ. P. 65(d)(2)(B).

injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (footnote omitted).

A showing of irreparable injury is "the sine qua non of injunctive relief" and the most important of the four factors. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting N*e. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). To satisfy this standard, the party "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "A delay in seeking a preliminary injunction of even only a few months— though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "[T]he very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (emphasis in original); *see also Seiko Kabushki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (noting that a plaintiff's "dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm" and "undercuts any sense of urgency"). Finally, a "preliminary injunction is an extraordinary and drastic remedy" and it is the movant who "bears the burden of persuasion to clearly establish all four . . . prerequisites." *Wreal*, 840 F.3d at 1247 (cleaned up).

## ANALYSIS

### I.     Irreparable Injury

#### a.   Delay

"A patentee's unexplained substantial delay in requesting injunctive relief weighs against a finding of irreparable harm because the delay suggests a lack of apparent urgency to change the status quo." *Powell v. Home Depot U.S.A., Inc.*, No. 07-80435-CIV, 2009 WL 3855174, at *15 (S.D. Fla. Nov. 17, 2009); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed.

Cir. 1995) (finding a patentee's "substantial period" of delay negates a finding of irreparable harm); *Nutrition 21 v. United States,* 930 F.2d 867, 872 (Fed. Cir. 1991) (same).

To address the issue of delay, a closer look at the pre- and post-filing history of this matter is in order. Plaintiff sent a cease and desist letter to Shuttleslide on May 7, 2024, demanding that it stop selling the Accused Products. [ECF No. 87-3 at 2–3[4]]. On March 25, 2025, the United States Patent and Trademark Office ("USPTO") issued Plaintiff the '111 Patent. [ECF No. 56-2 at 1]. On March 31, 2025, after more than ten months without a response from Shuttleslide, Plaintiff sent a second cease and desist letter. [ECF No. 87-4 at 2[5]]. Shuttleslide again failed to respond,[6] and on August 8, 2025—four months and eight days after the second cease-and-desist—Plaintiff filed its Complaint. [ECF No. 1]. Plaintiff then waited until October 14, 2025 to file its first preliminary injunction motion ("Original PI Motion").[7] [ECF No. 20]. This brings the total time between issuance of the patent and filing of the injunction motion to six months and nineteen days. The Original PI Motion was denied without prejudice after Shuttleslide moved to stay the case pending the PTAB review. [ECF No. 35 at 4]. Although the PTAB denied Shuttleslide's PGR petition on March 17, 2026, Plaintiff did not renew its preliminary injunction motion until May 1, 2026, [ECF No. 56], adding another 45-days' wait. Aside from including an overview of the PTAB decision, the Motion is not materially different from the Original PI Motion. *Compare* [ECF No. 20], *with* [ECF No. 56].

---

[4] Defendant references this letter in its response to the Motion but never attached it. It did, however, introduce the letter at the evidentiary hearing.

[5] As with the May 7, 2024 cease and desist letter, Defendant did not introduce the March 31, 2025 letter until the evidentiary hearing on the Motion.

[6] The briefings do not address Defendant's response to Plaintiff's two letters, but at the evidentiary hearing, Mr. Berta testified that both went unanswered.

[7] On October 14, 2025, Plaintiff filed separate preliminary injunction motions against each defendant in the case. [ECF Nos. 17, 18, 19, 20, 21]. The district court denied those motions without prejudice, instructing Plaintiff to file one combined motion for all defendants, [ECF No. 26], and Plaintiff did so on October 16, 2025, [ECF No. 30]. Procedural errors aside, we rely on the earlier of Plaintiff's two filing dates to assess delay.

Plaintiff and Shuttleslide unsurprisingly offer different ways of calculating the time it took Plaintiff to enforce its rights. Counting from Plaintiff's May 7, 2024 cease and desist letter, Shuttleslide faults Plaintiff for waiting 17 months[8] to pursue its exclusion rights under the '111 Patent. [ECF No. 64 at 13]. Shuttleslide contends this 17-month delay precludes a finding of irreparable harm. *Id.* Plaintiff counters that Shuttleslide's calculations are "misleading" because the "earliest date that Plaintiff could seek to enforce its rights" was March 25, 2025—*i.e.*, the day it secured the '111 Patent. [ECF No. 75 at 8]. Plaintiff does not offer an alternative to the 17-month figure Shuttleslide puts forward; instead, it simply asserts it has "diligently and promptly enforced its rights." *Id.* at 9. Fortunately, the arithmetic is not difficult. If we accept Plaintiff's argument that the clock began ticking only after it secured the '111 Patent, then Plaintiff waited six months and nineteen days before pursuing a preliminary injunction. Less than 17 months, to be sure, but still a significant delay. Further, this calculation is conservative because it does not account for the 45 days Plaintiff waited to refile its injunction motion following the PTAB denial.

Nor are we convinced that we should ignore the parties' interactions before March 25, 2025. It is true that Plaintiff could not sue before the USPTO granted its patent, but that does not mean it was precluded from taking steps to prepare for future litigation. Plaintiff could have marshaled its evidence and refined its arguments in anticipation of obtaining the patent. Accordingly, the fact that Plaintiff knew about Shuttleslide's alleged infringement in May 2024—well before securing the '111 Patent—gives important context for the roughly seven months between the issuance of the patent and Plaintiff's filing of the Original PI Motion. And so, although we do not adopt Defendant's calculations, we cannot say Plaintiff's position is correct either because it ignores the fact that it had nearly a year to prepare for litigation before securing its patent. Nevertheless, because even the

---

[8] To be precise, there are 17 months and 7 days between May 7, 2024 (date Plaintiff sent its first cease and desist letter to Defendant) and October 14, 2025 (filing of Original PI Motion), but Shuttleslide appears to round down. [ECF No. 64 at 13].

conservative figure shows that Plaintiff waited too long to press for an injunction, we proceed with Plaintiff's calculations.

Plaintiff's decision to wait nearly seven months (or more, taking the post-PTAB delay into account) before filing for a preliminary injunction is irreconcilable with irreparable harm in this case. As background, the Eleventh Circuit has held, and other courts have echoed, that delays in pursuing injunctive relief undercut a party's irreparable-harm argument.[9]  The Federal Circuit follows a similar approach in patent cases.  *See, e.g.*, *High Tech Med. Instr.*, 49 F.3d at 1557 (explaining that delay "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief").  In this case, Plaintiff not only waited a significant amount of time to press its rights, but it offers no good reason for that delay.  In fact, it offered no reason whatsoever in its reply, which dedicates a single paragraph to the delay analysis and focuses exclusively on the patent-award-as-triggering-event argument.  At the evidentiary hearing, Plaintiff's counsel nodded at several justifications—all variations on the theme that patent cases are complex and Plaintiff needed time to conduct due diligence—but failed to develop any of them.  The "due diligence" argument is not, as a general matter, strong,[10] and, in this case, where Plaintiff never states what that diligence

---

[9] *Wreal*, 840 F.3d at 1239 ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) ("[C]ourts (both in and outside the Eleventh Circuit) have held that unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion."); *see also Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."); *Magnet Commc'ns, LLC v. Magnet Commc'ns, Inc.*, No. 00-civ-5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sep. 19, 2001) (denying preliminary injunction in the face of an approximately two-and-a-half-month delay); *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 408–09 (S.D.N.Y. 2000) (denying preliminary injunction in the face of an approximately four-month delay).

[10] *See Regions Bank v. Kaplan*, No. 8:16-CV-2867-T-23AAS, 2017 WL 3446914, at *3 (M.D. Fla. Aug. 11, 2017) (delay of five months before filing suit, and a further three months before requesting preliminary injunction was not excused by need to review 13,000 documents as part of "due diligence"); *Tech Traders, LLC v. Insuladd Env't, Ltd.*, No. 6:18-CV-754ORL40GJK, 2018 WL 5830568, at *3 (M.D. Fla. Nov. 7, 2018) ("If the Court were to accept those arguments, then the necessity of moving expeditiously . . . could be brushed away and the irreparable harm prong could be eliminated by a lawyer citing a good faith 'need to investigate.'") (citing *Wreal*, 840 F.3d at 1248).

*entailed*, the excuse misses the mark.

We address one more potential reason, which came up during the evidentiary hearing. On cross-examination, when Mr. Berta was asked to account for the time between securing the patent and filing suit, he testified[11] that he needed to find a suitable attorney with experience in patent cases. To the extent Plaintiff adopts that explanation here, the argument is unavailing. Courts generally reject such counsel-related excuses for delay. *See Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *6 (S.D. Fla. Oct. 31, 2017) (rejecting the need to find new lawyers as a sufficient justification for a one-year delay); *Tech Traders*, 2018 WL 5830568, at *3 ("The financial or practical difficulty of obtaining a trademark lawyer . . . is not an adequate excuse for the delay."). In this case, the argument is especially lacking because it does not explain why Plaintiff waited *another* two months and seven days after filing the complaint—that is, after resolving the counsel issue—to seek a preliminary injunction. In any event, because Plaintiff never developed this argument—whether orally or in writing—it has been waived. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

Contrary to Plaintiff's arguments at the evidentiary hearing, the cases in Shuttleslide's response are compelling given the present facts. In *Wreal v. Amazon.com*, for example, Wreal sued Amazon for trademark infringement after it launched a service called "Fire TV." 840 F.3d at 1247. Although Wreal acted quickly, filing its complaint just two weeks after the Fire TV rollout, it then waited another five months before moving for a preliminary injunction. *Id.* During those five months, Wreal conducted no discovery and made only routine case management filings, which prompted the district court to deny the motion. *Id.* Affirming the denial, the Eleventh Circuit held that the district court

---

[11] Neither party ordered a transcript of the hearing and so we draw upon our notes and recollection.

did not abuse its discretion in concluding that Wreal's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Id.* at 1248. As the Court emphasized, "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action," which is why courts around the country "have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* (emphasis in original) (collecting cases). Wreal, like Plaintiff, failed to explain why it waited five months (nearly seven here) to file its motion, and the Court could discern no good reason for the delay. In fact, "the preliminary-injunction motion relied exclusively on evidence that was available to Wreal at the time it filed its complaint." *Id.* at 1248–49. Similarly, the parties in the instant case filed their joint discovery plan *after* Plaintiff filed the Motion, *see* [ECF No. 63], and nothing in the record suggests that Plaintiff acquired any of its evidence during litigation.

In *Seiko Kabushiki*, the plaintiff, a watch manufacturer, moved to enjoin its competitor from using its registered trademarks. 188 F. Supp. 2d at 1352. The court denied the preliminary injunction motion, finding that plaintiff had failed to show both likelihood of success on the merits and irreparable harm. *Id.* at 1355–56. Importantly for present purposes, the *Seiko* Court had this to say about the plaintiff's pre-litigation delay: "Plaintiff waited . . . almost a full year after it admits to knowing about Defendant's activities[] to file this lawsuit. Even giving Plaintiff credit for attempting to reach a settlement without litigation, there remains a three-month delay between Plaintiff's last communication with Defendants and commencement of this suit." *Id.* at 1356. Comparable delays in this case support a similar conclusion. Here, Plaintiff sent a cease-and-desist nearly eleven months before obtaining the '111 Patent. *See* [ECF No. 87-3]. Plaintiff now suggests this letter was pure bluster because it could not have brought a patent suit at that time. *See* [ECF No. 75 at 8–9]. Let us say we agree and set the May 2024 letter aside. Plaintiff sent its *second* cease and desist letter on March 31, 2025—with the '111 Patent in hand—and still it waited nearly seven months to file its injunction

motion.  It then waited *another* 45 days to refile effectively the same motion, updated with a paragraph discussing the PTAB denial.  Moreover, unlike *Seiko*, where the plaintiff could at least point to *some* pre-litigation negotiations between the parties, nothing in the record here suggests that these months were spent trying to reach a settlement.[12]

At the evidentiary hearing, Plaintiff also took issue with Defendant's reliance on *Menudo International.  See* 2017 WL 4919222.  In that case, the plaintiff filed its complaint in April 2017, nearly a year after learning about the defendants' alleged trademark infringement.  *Id.* at *4.  Responding to the defendants' charge of delay, the plaintiff argued that it had waited just 45 days after filing the complaint to move for a preliminary injunction.  *Id.*  The *Menudo* Court rejected this selective view of the case history, explaining that "it fails to account for any amount of time that occurred between the time of learning that Defendants were allegedly committing trademark infringement to the filing of the complaint."  *Id.* at *5.  "If the only time period that mattered was between the filing of a complaint and the motion for a preliminary injunction," the court went on, then "any plaintiff could sit idly by and ignore potential infringers[,]" which would "undermine[] the entire premise behind the necessity for irreparable harm."  *Id.*  Unlike Plaintiff here, the *Menudo* plaintiff proffered various reasons for its pre-suit delay, claiming it needed time to complete its trademark registrations, negotiate a resolution with the defendants, learn the extent of the harm, and find local counsel.  *Id.* at *6.  Still, none of these arguments persuaded the *Menudo* Court, because the plaintiff failed to articulate why it needed "such an extended period of time" to register its trademarks and it was "highly doubtful that [its] attorneys could not have filed a lawsuit in the interim."  *Id.*

---

[12] We do not mean to suggest that, to excuse delay, a party must show it was engaging in settlement negotiations. That is, of course, only one of various possible explanations for a party's delay in enforcing its rights.  In this case, this explanation is unavailable to Plaintiff for two reasons.  First, they did not make that argument and have therefore waived it.  *See Hamilton*, 680 F.3d at 1319.  Second, the record offers no support for that position. And, in any event, that excuse ignores the additional two-plus month gap between filing the complaint and the Original PI Motion, let alone the 45-day delay in refiling the Motion *after* it had been drafted.

10

These cases involved trademark disputes, but their rationale translates into the patent space. Indeed, the Federal Circuit in *High Tech Medical Instrumentation* relied on trademark—as well as copyright—cases to support its delay analysis. 49 F.3d at 1557. Courts in this district have done the same. *See Hernandez v. Stingray Grp. Inc.*, No. 24-CV-21226, 2025 WL 2263629, at *8 (S.D. Fla. Mar. 10, 2025) (relying, in part, on trademark cases in examining delay). And as Plaintiff's counsel emphasized during the evidentiary hearing, the technology at issue in this case is not complicated. The delay here cannot be attributed to time spent digesting the patent or assessing an allegedly infringing product's components—particularly when Plaintiff had *already* determined, in May 2024, that Defendant was infringing the to-be-awarded patent.

Without offering any good reason for the dilatory prosecution of its rights, Plaintiff cannot establish irreparable harm. This unexcused delay is "by itself sufficient grounds to deny its request for an injunction." *Pals Grp. Inc.*, 2017 WL 532299, at *6; *see also Hernandez*, 2025 WL 2263629, at *9 (extreme delay in enforcing patent rights precluded a finding of irreparable harm and so warranted denial of preliminary injunction).

###### b. *Evidence*

Unexplained delay aside, Plaintiff has also failed to carry its burden of establishing irreparable harm because the record is, for now, incomplete on the issue of harm. Plaintiff argues that Defendant's sale of the Accused Products: (1) threatens its market share, [ECF No. 56 at 12]; (2) harms its reputation and goodwill, *id.* at 13–14; (3) leads to price erosion, *id.* at 14; and (4) deprives Plaintiff of the benefit of its patent, *id.* at 15.

We address this last claim first, as it allows us to clarify an important point. While the Federal Circuit previously said that a "strong showing of likelihood of success on the merits coupled with continuing infringement raises a [rebuttable] presumption of irreparable harm," *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994), that is no longer the operative framework in patent

cases.  In *eBay Inc. v. MercExchange, L.L.C.*, the Supreme Court rejected this categorical presumption. 547 U.S. 388, 392 (2006).  Although *eBay* addressed permanent injunctions, the Eleventh Circuit explained there was "no obvious distinction . . . between permanent and preliminary injunctive relief to suggest that *eBay* should not apply to the latter."  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008).  Three years after the Eleventh Circuit's prescient words, the Federal Circuit "put the question to rest and confirm[ed] that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief."  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).  Accordingly, Plaintiff must "demonstrate something more than intrusion upon the right to exclude."  *Jetchill Ltd v. Shenzhen Jiarui Minghui Trading Co., Ltd*, No. 1:25-CV-23377-DSL, 2025 WL 3541860, at *19 (S.D. Fla. Nov. 26, 2025), *report and recommendation adopted sub nom. Jetchill Ltd. v. Shenzhen Jiarui Minghui Trading Co.*, No. 1:25-CV-23377, 2025 WL 3610620 (S.D. Fla. Dec. 12, 2025).

With those marching orders, we address Plaintiff's market share argument.  Plaintiff argues that the Accused Products are "direct competitors to the patented Sea Swivel mount," which Shuttleslide "actively markets" as "lower-cost alternatives to the Sea Swivel."  [ECF No. 56 at 12].  By positioning their products as cheaper alternatives, Plaintiff goes on to say, Shuttleslide has caused Plaintiff to "lose its market share to the [Accused] Products."  *Id.*  As support, Plaintiff puts forth (1) Mr. Berta's declaration and testimony, [ECF No. 56-1 ¶¶ 22–23]; and (2) social media posts, [ECF Nos. 98-5–98-11].[13]

Mr. Berta testified, consistent with his written declaration, that Shuttleslide and Sea Swivel compete in a "niche" industry, [ECF No. 56-1 ¶ 22], and that, on one occasion, he received a call from

---

[13] Plaintiff also argued that Shuttleslide's agreement with a major marine products distributor, Keystone, augmented the damage from its infringing sales.  At the evidentiary hearing, however, Shuttleslide's owner, Mr. Taylor, confirmed that the Keystone agreement had effectively terminated, in part, because of this ongoing litigation.

a customer confusing the Shuttleslide he had purchased with a Sea Swivel mount, *id.* ¶ 23.  The social media evidence consists of adverts from Shuttleslide touting the quality and functionality of the Accused Products, [ECF No. 98-5, 98-6], and Shuttleslide's response to a user who expressed a desire to trade a Shuttleslide mount for a Sea Swivel, [ECF No. 98-8].  In the customer response post, Shuttleslide informed the user that it, too, sold a rotating mount, which was being offered at a discounted price for a limited time.  *Id.*

This evidence supports the view that Shuttleslide has marketed the Accused Products to potential Sea Swivel customers.  But the evidence says nothing about whether Shuttleslide's sale of the Accused Products has diverted Sea Swivel's customers, nor does Plaintiff attach any other evidence to support its broader point about market share.  At this stage of the litigation, the record lacks evidence about the scope of the motor-mount market or Plaintiff's position in it, including its sales, market share, and growth (or lack thereof).  Even if the social media posts suggested Shuttleslide tried to poach Sea Swivel customers—instead of simply attempting to retain its own—they say nothing of its success in doing so.  The record does not include the customer's response to Shuttleslide's message, nor do the other postings suggest consumer migration from Sea Swivel to Shuttleslide.  Bearing on this second point, at the hearing, the parties debated the significance of a message by user "Aqualizard86."  [ECF No. 98-10].  According to the post, Aqualizard86, after some deliberation, chose to buy a Shuttleslide (presumably one of the Accused Products, though the post does not specify) over a Sea Swivel mount in part because Shuttleslide offered a 30% discount.  *Id.*  The post received a single "thumbs up," suggesting one user agreed with Aqualizard86's assessment—or was happy that Aqualizard86 had made a decision at all.  At any rate, a single customer's experience, without more, cannot support the broader claim Plaintiff makes regarding market share.[14]

---

[14] We are not discounting the potential value of social media posts in evincing consumer trends and supporting irreparable harm, but we are careful not to stray beyond what the posts in this case show.

Relying on *Socket Solutions*, Plaintiff argues that "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm." [ECF No. 56 at 12 (quoting *Socket Sols., LLC v. Imp. Glob.*, LLC, No. 1:23-CV-24517-DSL, 2024 WL 4467001, at *11 (S.D. Fla. Sep. 9, 2024)]. Plaintiff fails to see the key differences between this case and *Socket Solutions*. First, unlike the plaintiff in *Socket Solutions*, which established that the parties competed directly on *Amazon's marketplace, see* 2024 WL 4467001, at *11, Plaintiff here merely asserts that the Sea Swivel and Accused Products are "direct competitors," without identifying any market or platform in which they compete, [ECF No. 56 at 12]. Moreover, the plaintiff in *Socket Solutions* proved, through "uncontroverted evidence," that the infringer's product was advertised "next to its products when customers search[ed] in Amazon for its product." 2024 WL 4467001, at *11. Compared to this concrete evidence of head-to-head competition in a clearly delineated market, Plaintiff's proffered evidence falls short.

Turning now to the matter of reputation and goodwill, Plaintiff asserts that its products "enjoy [high] customer ratings[15] and significantly more exposure," and that the Accused Products "divert sales because Shuttleslide has appropriated the patented Sea Swivel features." [ECF No. 56 at 13]. Plaintiff relies on Mr. Berta's declaration for factual support. Mr. Berta explained that the Sea Swivel has received positive exposure through social media posts and "positive reviews by some of the biggest names in the angling industry." [ECF No. 56-1 ¶ 7]. Mr. Berta also noted that Sea Swivel "invested more than $500,000.00 in marketing and advertising" over the past three years, adding that he is "informed and believe[s] that . . . Sea Swivel is widely recognized and exclusively associated by customers, the public, and the trade as being the leading Trolling Motor Mount in the world." *Id.* ¶¶ 8–9. Finally, Mr. Berta shared an anecdote in which a customer called Plaintiff's helpline believing

---

[15] We assume Plaintiff meant to write "high customer ratings," given the surrounding context. *See* [ECF No. 56-1 ¶ 7 (noting Sea Swivel "has received positive reviews")].

his Shuttleslide mount was a Sea Swivel. *Id.* ¶ 23. The record does not disclose *why* the customer was confused. And although Mr. Berta claims that "many customers conflate the [Sea Swivel and the Accused Products]," *id.*, he supplies no additional evidence of customer confusion.

As before, we draw only reasonable inferences from this evidence and avoid leaps in logic. The evidence shows that Plaintiff has dedicated over $500,000 to marketing and brand exposure. *Id.* ¶ 8. That figure, however, represents three years' worth of expenses and says nothing about Plaintiff's marketing expenditure since Defendant began selling the Accused Products. The evidence also shows that Plaintiff's products have received positive reviews from customers and influencers within the angling world. *Id.* ¶ 7. We are uncertain, however, about Mr. Berta's representation that the "Sea Swivel is widely recognized and exclusively associated by customers, the public, and the trade as being the leading Trolling Motor Mount in the world." *Id.* ¶ 9. While we do not question Mr. Berta's credibility, this statement does not reflect his own knowledge but what he has been "informed." *Id.* Moreover, such sweeping claims about the Sea Swivel's worldwide renown are difficult to assess on the present record, particularly given that the product has existed for only about three years and Plaintiff offers no market data, sales figures or other evidence substantiating this claim. *Id.* ¶ 5.

Citing *Douglas Dynamics, LLC v. Buyer Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013), Plaintiff argues that "an infringing competitor who sells an inferior product . . . is likely to cause irreparable harm by not only by [sic] diverting sales but also by eroding the patent owner's 'reputation and brand distinction.'" [ECF No. 56 at 13]. In a nutshell, *Douglas Dynamics* held that "[s]imply because a patentee manages to maintain a profit in the face of infringing competition does not automatically rebut a case for irreparable injury." 717 F.3d at 1344. Put differently, *Douglas Dynamics* warns courts not to assume that a market juggernaut's resistance to an infringer's unlawful activity erases harm. The Federal Circuit also noted that customer confusion is not the only way to show reputation loss. *Id.* at 1344– 45. At no point, however, did *Douglas Dynamics* lift the requirement that a movant produce evidence

15

to support irreparable harm. And, in fact, the Federal Circuit later clarified that evidence regarding a plaintiff's ability to secure customers while facing a competing, allegedly infringing product is still relevant to the harm analysis, further reinforcing the need for an evidence-focused inquiry. *SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, No. 2023-1058, 2024 WL 358136, at *5 (Fed. Cir. Jan. 31, 2024). Plaintiff takes *Douglas Dynamics* beyond its reasoning, suggesting that, when two products share a market, the mere existence of a "cheaper look-alike" is enough to establish harm. [ECF No. 56 at 13–14]. We disagree.

Shuttleslide argues Plaintiff has provided no "credible evidence whatsoever" to prove irreparable harm and dismisses Mr. Berta's declarations as "conclusory." [ECF No. 64 at 15]. Shuttleslide draws a parallel between this case and *Nivel Parts & Mfg. Co. v. Textron, Inc.*, where the court denied a preliminary injunction because the movant failed to show irreparable harm. No. 3:17-cv-146-J-32JRK, 2017 WL 1552034, at *2–3 (M.D. Fla. May 1, 2017). Nivel submitted only the declaration of its president to support its claimed loss of market share, lost revenue, reputational damage, price erosion and "loss of its exclusive market niche." *Id.* at *2. Although Sea Swivel offers more than its owner's say-so, it does not offer *much* more. Mr. Berta's representations, both in writing and during the evidentiary hearing, do not demonstrate a loss of market share, and although he did indicate that Sea Swivel and Shuttleslide directly complete, that alone is insufficient. *See id.* at *2 (rejecting plaintiff's argument that, because it directly competed with defendant "each sale of [the allegedly infringing product was] a lost sale for [plaintiff]"); *see also Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x. 297, 301 (Fed. Cir. 2009) ("[L]ost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction, because granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions 'in every patent case where the patentee practices the invention.'")

(cleaned up). We contrast this record with that of, for example, *SharkNinja Operating LLC*,[16] where the plaintiff presented evidence that, shortly after launching its "viral" at-home slush machine, it commanded 96% of the market. 2026 WL 1180977, at *13. That controlling share plummeted to 35% when the infringing competitors entered the market, and—important for causation purposes— the plaintiff's market share "rebounded during the pendency of the [temporary restraining order] in th[at] matter." *Id.*

Finally, we consider Plaintiff's claims of price erosion. At the evidentiary hearing, Mr. Berta conceded that the Sea Swivel is now $100 more expensive than when it first launched, and he has never had to price down his product. And although he testified to having faced criticism for his prices, he did not say how often he had been accused of overcharging, nor do any of the social media posts suggest that customers believe the Sea Swivel is overpriced.

At oral argument, Plaintiff's counsel also argued that Sea Swivel did not need to present sales figures because it had shown price erosion. While it is true that financial data is simply one way of demonstrating irreparable harm, rather than required evidence, Plaintiff still must present sufficient evidence to support its position. In this case, Plaintiff relies on Mr. Berta's recollection that, at some point, some customers—unclear how many—believed that the Sea Swivel was too expensive. The testimony does not disclose whether these customers turned to Shuttleslide as a cheaper alternative and, given the uncertain timeframe, it is unclear whether the Accused Products were even available then. In *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, for instance, the plaintiff offered fact and expert testimony, financial records, and specific instances when it lost customers to the allegedly infringing competitor. 664 F.3d 922, 930 (Fed. Cir. 2012). By contrast, in *Jetchill Ltd*, the plaintiff relied on the company's co-founder to support price erosion. *See* 2025 WL 3541860, at *2, *11, *20. The co-

---

[16] *SharkNinja Operating LLC v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule "A,"* No. 1:25-CV-25323-RAR/LFL, 2026 WL 1180977, at *1 (S.D. Fla. Mar. 13, 2026).

founder testified that he had chosen a specific price to suggest premium quality and exclusivity. *Id.* at *20. He also stated Jetchill had been forced to offer discounts due to copycats in the market. *Id.* But none of this established the required "causal nexus with [the d]efendant's marketing and sale of its product." *Id.*

Plaintiff's evidence sits on the *Jetchill* end of the spectrum. First, Mr. Berta's experience fielding an unspecified number of criticisms regarding the price of his product cannot raise the price erosion argument above the speculative level—particularly given that Sea Swivel's prices are higher now than when the product was first released. Second, the social media posts in evidence—which show one customer deciding to purchase a Shuttleslide and another considering switching to a Sea Swivel— reflect isolated experiences rather than broader consumer attitudes toward pricing. Third, we do not consider evidence regarding Shuttleslide's revenue, which Plaintiff discussed for the first time in Plaintiff's reply brief, [ECF No. 75 at 6–8], because a reply memorandum "may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence," *Bell N. Rsch., LLC v. HMD Am., Inc.*, No. 1:22-CV-22706, 2023 WL 8455938, at *4 n.7 (S.D. Fla. Nov. 14, 2023), *report and recommendation adopted*, No. 22-22706-CIV, 2023 WL 8449590 (S.D. Fla. Dec. 6, 2023) (quoting *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14–20140–CIV, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014)).

Because Plaintiff has failed to establish irreparable harm, the Motion should be denied, and the remaining factors need not be addressed. *See U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, No. 19-62225-CIV, 2020 WL 6544489, at *3 (S.D. Fla. Nov. 6, 2020) ("When the movant fails to prove irreparable harm, the court need not analyze the remaining elements.") (citing *City of Jacksonville*, 896 F.2d at 1285.

18

## II.    Success on the Merits

Plaintiff's failure to establish irreparable harm is reason enough to deny the Motion.   But Plaintiff has also failed, at this juncture, to "clearly establish" a substantial likelihood of success on the merits.   *Id.* (explaining that the movant must "clearly establish[] the burden of persuasion" for each preliminary injunction element) (quoting *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014)).

To prevail on the merits, Plaintiff must show: (1) it will likely prove that Shuttleslide infringes the '111 Patent, and (2) its infringement claim will likely survive Shuttleslide's challenges to the validity and enforceability of the '111 Patent.   *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).   If Shuttleslide raises a substantial question concerning either infringement or validity, meaning, it asserts an infringement or invalidity defense that the patentee cannot prove "lacks substantial merit," the preliminary injunction should not issue.   *Id.* at 1350–51.

"Patent infringement, whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence."   *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011).   "Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims, followed by (2) comparing the properly interpreted claims to the accused device."   *Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 2254467, at *8 (S.D. Fla. May 27, 2022), *report and recommendation adopted*, No. 21-CV-61035-RAR, 2022 WL 2237176 (S.D. Fla. June 21, 2022) (quoting *A.W. Indus. Inc. v. Elec. Connector Serv. Inc.*, No. 97-6452-CV, 1997 WL 873869, at *7 (S.D. Fla. Dec. 9, 1997)).

Here, Shuttleslide contends that the term "swivel element" must be construed as a means-plus-function limitation under 35 U.S.C. § 112(f).   [ECF No. 64 at 7–8].   Sea Swivel responds that claim construction is unnecessary at this stage and urges us to apply the term's ordinary meaning.   [ECF No. 75 at 2–3].   It also notes that Shuttleslide fails to address the presumption *against* means-

plus-function analysis, applicable here because the claim element does not use the word "means." *Id.* at 3.

To contextualize the dispute, Section 112(f) permits patent drafters to claim an element as "means" or "steps" for performing a function without identifying any corresponding structure. 35 U.S.C. § 112(f). There is, however, a price for invoking § 112(f): claims drafted under that provision will be limited to the structures disclosed in the specification and their equivalents, *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997), whereas non-means claims are generally not limited to their embodiments, *see Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[W]hen the specification describes a single embodiment to enable the invention, this court will not limit broader claim language to that single application unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (cleaned up).

When a claim uses the word "means," a rebuttable presumption arises that the claim terms are governed by § 112(f). *See Williamson v. Citrix Online*, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Conversely, when a claim term *does not* use the word "means," the presumption is that it is not governed by § 112(f). *Id.* That non-means presumption is not a strong one, however, and "the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* "Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words" may be "tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure.'" *Id.* at 1350 (quoting *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)). The "presence of modifiers can," however, "change the meaning of" a nonce word, provided they disclose sufficiently definite structure. *Id.* at 1351.

Shuttleslide does not mention the presumption that cuts against their argument. That is a poor start. Even a presumption that is "not strong" alters the analysis in a way that Shuttleslide's brief

fails to address. Notably, although Plaintiff bears the burden of establishing likelihood of success, to prevail on their means-plus-function argument, it is Defendant who must show that the claim fails to sufficiently recite structure. *See Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 1:17-CV-492, 2017 WL 6610873, at *2 (W.D. Mich. Dec. 27, 2017). On that account, Defendant says that Plaintiff's failure to identify which structure in the claims chart corresponds to the "swivel element" shows that the term is a means-plus-function limitation. [ECF No. 64 at 8]. From there, and without further analysis of the patent language, particularly how a person of ordinary skill in the art would interpret it,[17] Defendant goes on to explain what the Court should do "having decided that the means plus function analysis applies." *Id.* (quoting *SightSound.Com Inc. v. N2K, Inc.*, 185 F. Supp. 2d 445, 455–56 (W.D. Pa. 2002)). Such perfunctory treatment of the means-plus-function analysis will not do.

But this is Plaintiff's motion for a preliminary injunction. As a result, it bears the ultimate burden of clearly establishing that it has a substantial likelihood of success on the merits. In brief, Defendant's failure to establish that § 112(f) applies notwithstanding the absence of "means" language in Claim 1 does not relieve Plaintiff of its obligation to demonstrate that it is substantially likely to prevail under its proposed claim construction and that the Accused Products satisfy each limitation of Claim 1. And based on the present record, we cannot conclude that Plaintiff has made the required showing.

Plaintiff argues that its "straightforward" claim language requires no claim construction. [ECF No. 56 at 9]. Regardless of whether the claim language is "straightforward," it is far from uncontested in this case. [ECF No. 64 at 7–9]. Responding to Shuttleslide's means-plus-function argument, Plaintiff asserts that the '111 Patent lacks the word "means" and is therefore presumed beyond § 112(f)'s reach. That is true, but the presumption is not strong, *Williamson*, 792 F.3d at 1349, and, in

---

[17] The Court must give claim terms the ordinary and customary meaning ascribed to them by "a person of ordinary skill in the art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

any event, because it falls on Plaintiff to show that the Accused Products fit the '111 Patent's limitation, it must show what those limitations *are*.  To show that Claim 1 of the '111 Patent recites sufficiently definite structure such that "swivel element" is not a means-plus-function term, Plaintiff simply quotes the entirety of Claim 1.  [ECF No. 75 at 3].  Contrastingly, the court in *Camatic Proprietary Ltd*, the case Plaintiff relies on to show "swivel element" is not a function term, took great pains to show how the disputed term, "seat pivot mechanism," in the context of the patent as a whole, showed definite structure.  2017 WL 6610873, at *4.  Moreover, Plaintiff's over-reliance on the presumption, predicated on the absence of "means," ignores *Williamson*'s observation that "element" and other such "nonce words" "may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112." *Williamson*, 792 F.3d at 1350; *see Raven Sun Creative, Inc. v. Walt Disney Parks & Resorts U.S., Inc.*, No. 6:21-CV-1864-ACC-EJK, 2023 WL 12033365, at *7–8 (M.D. Fla. Mar. 6, 2023) (construing the term "controller" as a means-plus-function limitation despite absence of the word "means").

At bottom, while Shuttleslide has not shown that § 112(f) applies, Plaintiff, as the movant in this preliminary-injunction motion, has likewise failed to establish a substantial likelihood of success as to its proposed claim construction.  That independent failure is a second reason to deny the Motion.

\*          \*          \*

For the foregoing reasons, we respectfully recommend that the Motion be **DENIED**.

Under Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have 14 days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898, 901 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 768–69 (11th Cir. 2016).

**DONE AND RECOMMENDED** in the Southern District of Florida on July 10, 2026.

_____
**YENEY HERNANDEZ**
**UNITED STATES MAGISTRATE JUDGE**

cc:        counsel of record

23